United States Court of Appeals

For the Eighth Circuit

_____

No. 21-2984

_____

Jonathan Edwards; Carla Edwards

*Plaintiffs - Appellants*

v.

Skylift, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: June 14, 2022
Filed: July 12, 2022

_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Jonathan Edwards was injured by a machine that Skylift, Inc., manufactured and sold, he sued Skylift claiming that the machine was defective and unreasonably dangerous and that Skylift negligently designed it. The district court[1]

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

rejected these claims and granted summary judgment to Skylift—a determination that Edwards appeals. Reviewing his contentions de novo, *see Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 660 (8th Cir. 2018), we affirm.

The accident occurred while Edwards was employed by Entergy Arkansas, LLC. On the night of the accident, he was part of a crew of employees that was cleaning storm debris in a Little Rock neighborhood. To assist with the cleanup, the crew used a digger derrick that Skylift manufactured in 2010 and later sold. The district court found, and Edwards does not dispute the finding, that this particular model was designed to be narrow enough to travel through tight spots, such as down small alleyways and trails or through backyard gates. The machine's top-heaviness can render it unstable in certain circumstances.

The machine had a boom that could be raised and rotated. To ensure that it remained stable while the boom was in operation, the machine featured an interlock system that prevented the user from operating the boom unless the user deployed the machine's stabilizing outriggers. But the user could override the interlock system with the flip of a switch located on the machine. Skylift's expert testified that the override switch isn't intended for operator use in the field but is installed so that certain parts of the machine can be accessed during maintenance.

Skylift warned users not to operate the boom without the outriggers deployed. The machine's operations manual said, in red capital letters sandwiched between two red "WARNING" alerts, that the "boom must remain in stowed position until outriggers are deployed." Meanwhile, Entergy gave its employees a training manual informing them that "outriggers **shall** be used to level and stabilize the vehicle before the boom is lifted." It also trained its employees on the use of diggers like the one here and on the proper use of outriggers, specifically instructing them that "[o]utriggers shall always be used."

At the time of the accident, Edwards was rigging a downed pole to the digger derrick's boom while another Entergy employee, Jeremy Gray, operated the digger derrick. Gray intentionally flipped the override switch and moved the boom without first deploying the outriggers. The machine became unstable and tipped over on top of Edwards, seriously injuring him.

Edwards claims that the machine contained design defects that rendered it unreasonably dangerous. More specifically, he asserts that the machine's override switch should have been accessible only by a key that should not be taken into the field, or that the machine should have sounded alarms or flashed light to warn bystanders that a user had flipped the override switch.

Arkansas substantive law applies in this diversity case. *See Apex Oil*, 881 F.3d at 660. Under that law, the manufacturer or seller of a product is strictly liable for damages if it supplies a product that is "in a defective condition that rendered it unreasonably dangerous," and the defective condition proximately causes harm to a person or to property. *See* Ark. Code Ann. § 16-116-101(a). After determining that the machine was not defective, the court also held that the machine was not unreasonably dangerous because Edwards, Gray, and the rest of the crew knew the hazards of operating the machine without deploying the outriggers. Edwards does not dispute that the crew knew of this danger, and he bears the burden of proving that the machine was unreasonably dangerous. *See Pilcher v. Suttle Equip. Co.*, 223 S.W.3d 789, 794 (Ark. 2006).

We agree with the court's conclusion that Edwards has not produced sufficient evidence to support a finding that the digger derrick was unreasonably dangerous as Arkansas defines that phrase, and so we need not decide whether the machine's design was defective. A product is unreasonably dangerous under Arkansas law if it is "dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product, assuming

the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses." *See* Ark. Code. Ann. § 16-116-202(7)(A); *see also Apex Oil*, 881 F.3d at 661. The definition goes on to emphasize the importance of a product user's actual knowledge, and requires a factfinder to consider "any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess." *See* Ark. Code Ann. § 16-116-202(7)(A). According to Arkansas courts, this means that where the record reveals that "the actual plaintiff sitting in the courtroom" subjectively knew that the use in question was dangerous, then it is the plaintiff's subjective knowledge, rather than that of an ordinary user, that controls. *See Mason v. Mitcham*, 382 S.W.3d 717, 720 (Ark. Ct. App. 2011) (citing *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 133 (Ark. 1983)).

The record here shows that Edwards, Gray, and the rest of the cleanup crew all knew that operating the machine without deploying the outriggers was dangerous. Yet Gray flipped the override switch without doing so. Given this knowledge of the danger at issue, we agree with the district court that the product was not unreasonably dangerous, i.e., "dangerous to an extent beyond that which" was actually contemplated by the machine's users.

Edwards does little to confront this glaring deficiency in his claim, focusing instead on the feasibility of adding certain features to the machine that he says would have prevented the accident. While that approach may work in other jurisdictions, it is not at home in a jurisdiction like Arkansas whose relevant statute adopts a so-called "consumer expectations" standard, *see Mason*, 382 S.W.3d at 720; *see also* Robert F. Thompson, *The Arkansas Products Liability Statute: What Does "Unreasonably Dangerous" Mean in Arkansas?*, 50 Ark. L. Rev. 663, 666 (1998), a standard taken "substantially verbatim" from the Restatement (Second) of Torts § 402A. *See Berkeley Pump*, 653 S.W.2d at 131. And under that standard, only dangers beyond the contemplation of the buyers and users will render a product unreasonably

dangerous. Since Edwards and the rest of the crew knew the danger of operating the digger derrick's boom without first deploying the outriggers, under Arkansas law, the machine wasn't unreasonably dangerous.

Edwards resists this conclusion with one argument that warrants additional discussion. He says that Skylift is arguing that the machine's danger was open and obvious but that Arkansas courts have expressly declined to adopt an open-and-obvious rule that would permit manufacturers and sellers to supply obviously defective and unreasonably dangerous products. *See Forrest City Mach. Works, Inc. v. Aderhold*, 616 S.W.2d 720, 722–23 (Ark. 1981). The district court did not have an opportunity to address this argument because Edwards did not raise it until his reply brief to our court. In fact, in his response to Skylift's motion for summary judgment before the district court, he actually argued that the override switch "does not rise to the level of open and obvious."

Edwards misstates Skylift's position. Skylift simply maintains that Edwards knew the risks the machine posed and so he failed to make out a case under the statute. If Edwards is intimating that our conclusion in Skylift's favor necessarily implies that we are endorsing a discredited defense, he is off the mark. Our conclusion rests squarely on Edwards's actual knowledge and owes nothing to an inference that Edwards knew or should have known of a danger because it was open and obvious, *cf. Lockley v. Deere & Co.*, 933 F.2d 1378, 1382 (8th Cir. 1991); *see also Larson Mach., Inc. v. Wallace*, 600 S.W.2d 1, 8 (Ark. 1980), and in fact it wasn't as Edwards admits. The Arkansas courts, as do we for that matter, routinely apply the plain statutory language and hold that defendants are entitled to judgment when a plaintiff fails to show that a product was not unreasonably dangerous given the knowledge of the actual plaintiff or ordinary user of the product. That is all we do here. *See, e.g.*, *Apex Oil*, 881 F.3d at 661; *Mason*, 382 S.W.3d at 720; *Purina Mills, Inc. v. Askins*, 875 S.W.2d 843, 847 (Ark. 1994); *Berkeley Pump*, 653 S.W.2d at 133.

We now turn to Edwards's claim that Skylift negligently designed the machine. In his complaint Edwards asserted that Skylift was negligent both in its design of the machine and in failing to warn of its dangers. But Edwards clarifies on appeal that he is not pursuing a failure-to-warn claim "related to any operator's manuals or stickers on the machine itself." He is instead maintaining that the machine's failure to include audio or visual warnings are shortcomings in the machine's design. We therefore take him to be raising a single negligence claim based on the machine's design rather than asserting two separate negligence claims, one based on design and the other based on a failure to warn.

Arkansas recognizes that a plaintiff may assert both strict-liability and negligence claims in a product-liability action. *See W.M. Bashlin Co. v. Smith*, 643 S.W.2d 526, 529 (Ark. 1982). The Arkansas Supreme Court has explained that negligence occurs when "the defendant has failed to use the care that a reasonably careful person would use under circumstances similar to those shown by the evidence in the case." *See Wagner v. Gen. Motors Corp.*, 258 S.W.3d 749, 754 (Ark. 2007). To demonstrate negligence, the plaintiff must show that the defendant breached a legal duty to the plaintiff, and that the breach proximately causes the plaintiff harm. *See id.* at 753–54.

No one disputes that Gray used the digger derrick improperly and that the machine was safe when properly used. It is also undisputed that Skylift adequately warned against using the machine in the unsafe manner that it was used here, and that if Skylift's instructions had been heeded, the accident would not have happened. Edwards admits that the machine was intended to be used by, and actually was used by, people who had been trained to use the machine properly and who actually knew that using the machine without its outriggers was dangerous. And Edwards does not convincingly argue that the machine fell short of contemporary industry standards; in fact, Edwards's expert may well have admitted they satisfied those standards. As the Arkansas Supreme Court once explained, "[r]ealization after an accident that a

machine might have been manufactured in a different way to possibly eliminate the accident should not bear on the determination of negligence." *See Verson Allsteel Press Co. v. Garner*, 547 S.W.2d 411, 415 (Ark. 1977). We think a similar hindsight bias is at work here in Edwards's argument. We therefore agree with the district court that no reasonable jury could find that Skylift negligently designed the digger derrick.

Finally, Edwards challenges the district court's failure to consider an affidavit he submitted and an affidavit submitted by his expert on the ground that those affidavits were shams. "An affidavit is a sham affidavit if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before," but this does not include an affidavit that "merely explains portions of a prior deposition that may have been unclear." *See Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020). Reviewing the affidavits ourselves and the parties' arguments about them, we fail to see how, even if the court did err (a matter we do not decide), those affidavits would affect the outcome of this case. We see nothing in them that calls into question our determinations that the machine was not unreasonably dangerous under Arkansas law or that Skylift did not negligently design it, and so we do not think reversal is warranted.

Affirmed.

_____